<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ———————————————— : | | |
| GREGORY GARCIA | : | |
| And ALISON GARCIA, | : | Case No. 2:19-cv-17946-BRM-JAD |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| FREDRIC M. KNAPP, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| ———————————————— : | | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are three Motions to Dismiss. Defendants Janine Buchalski ("Buchalski"), Fredric M. Knapp ("Knapp"), Vincent Leo, III ("Leo"), Thomas A. Zeante ("Zeante"), and the Morris County Prosecutor's Office ("Prosecutor's Office") (together, the "Prosecutor Defendants") filed a Motion to Dismiss in Lieu of Filing an Answer seeking to dismiss Counts One and Six of the Complaint, or in the alternative to stay the litigation pending the resolution of state criminal charges pending against Plaintiff Gregory Garcia ("Mr. Garcia"). (ECF No. 6.) The Prosecutor Defendants also separately filed a Motion to Dismiss Counts Three, Four and Five. (ECF No. 7.) Defendants Anthony Fernandez ("Fernandez"), Charles Kranz ("Kranz"), David Young ("Young"), and the Wharton Police Department ("Wharton Police") (together, the "Police Defendants") also have filed a Motion to Dismiss. (ECF No. 18.) Mr. Garcia and Alison Garcia ("Alison Garcia," together, the "Garcias") oppose all three Motions. (ECF Nos. 15, 21) All the Defendants filed Replies. (ECF Nos. 16, 17, 22.)

Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motions to Dismiss are **GRANTED**, while the Prosecutor Defendants' Motion, in the alternative, to Stay the litigation pending the completion of the criminal prosecution of Mr. Garcia is **DENIED** as moot.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.   Factual Background

Mr. Garcia is a police officer with the police department of Wharton, New Jersey, who resides in Morris County, New Jersey. (Compl. (ECF No. 1) ¶ 1.) Alison Garcia also resides in Morris County, New Jersey. (*Id.* ¶ 2.) Fernandez is Chief of Police of the Wharton Police Department. (*Id.* ¶ 7.) Young and Kranz are police officers with the Wharton Police. (*Id.* ¶¶ 8, 9, 83.) Prosecutor Knapp is "in command and control" of the Morris County Prosecutor's Office, where Zelante, Buchalski, and Leo work. All Defendants who are natural persons live in Morris County, New Jersey. (*Id.* ¶¶ 3-9.)

In December 2016, Mr. Garcia filed a claim for Temporary Disability Insurance with the New Jersey Department of Labor, having begun seeking treatment for alcoholism in November 2016. (*Id.* ¶ 16.) On January 2, 2017, he checked himself into a rehabilitation program in Miami, Florida, a program he successfully completed by the end of that month. (*Id.* ¶¶ 17-19.). In March 2017, he was declared fit for duty after undergoing a Fitness for Duty Evaluation. (*Id.* ¶¶ 22, 23).

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

His fitness was communicated by his treatment provider, Matthew Guller of the Institute of Forensic Psychology, to Fernandez, as well as to Knapp, Zelante and/or Leo of the Morris County Prosecutor's Office. (*Id.* ¶¶ 22, 22.) Dr. Guller concluded, among other things, that Mr. Garcia "is capable of carrying a weapon and fulfilling all of the duties of his rank." (*Id.* ¶ 26.)

On December 4, 2017, Mr. Garcia applied for a Firearms Purchaser Identification Card with the police department of the nearby town of Dover, New Jersey. (*Id.* ¶ 28). He answered "no," to the question on the application asking, "Are you an alcoholic?" (*Id.* ¶¶ 29-30). On April 11, 2018, he applied for a handgun purchase permit. (*Id.* ¶ 31). Again he checked the "no" box for that application's question, "Are you an alcoholic?" (*Id.* ¶ 32). Mr. Garcia infers the "no" answer is appropriate because a State of New Jersey Certificate of Eligibility form for the transfer of a shotgun or rifle—a form with which he "had prior experience with"—asks the same question and next to the answer boxes states, in bold text, "*Note: a recovered alcoholic may answer no to this question." (*Id.* ¶ 33.) He alleges that when he signed this form he had been sober since completing his alcohol treatment in January 2017.

At some point, Fernandez came into possession of a photograph of "closed ammunition cans supposedly located" at the Garcias' house. (*Id.* ¶ 49). Seeing this picture, Buchalski concluded "Gregory Garcia may be in possession of a weapon that might be an assault-style firearm." (*Id.* ¶ 49.) Buchalski completed an affidavit used to support an application for a search warrant for the Garcia residence. (*Id.* ¶ 47.) A judge issued a search warrant based upon Buchalski's affidavit. (*Id.* ¶ 54).

On June 18, 2018, the Morris County Prosecutor's Office executed a so-called no knock search warrant at that residence. (*Id.* ¶ 45). The search revealed assault weapons, suppressors, and large-capacity magazines. (*Id.* ¶ 74-76, 78).

On October 23, 2018, Mr. Garcia was indicted on three counts of false representation based on his applications for the Firearms Purchaser Identification Card and handgun-purchase permits. (*Id.* ¶ 35.) He also was indicted on four counts of unlawful possession of assault firearms, two counts of unlawful possession of firearms suppressors, and sixteen counts of unlawful possession of large-capacity ammunition magazine. (*Id.* ¶ 44). Finally, he was indicted for endangering the welfare of a child and child neglect. (*Id.* ¶ 80). This criminal prosecution against the plaintiff is pending in the Superior Court of New Jersey, Morris County, under Docket No. MRS-18-980.

Mr. Garcia contends the search warrant was illegally obtained because ammunition in the photographs can be "used in competitive shooting and/or hunting" and because "anyone over the age of 18" could have purchased the ammunition. (*Id.* ¶¶ 49, 53.) Therefore, the search warrant was based on nothing more than Buchalski's "naked suspicion" that Mr. Garcia was in possession of assault weapons. (*Id.* ¶ 54). Mr. Garcia contends his prosecution is wrongful because prosecutors did not present evidence to a grand jury that he had successfully completed his alcoholism treatment, that he was declared fit for duty and capable of carry a weapon, that prosecutors "are incapable of producing sufficient evidence of mens rea," and because the search warrant that led to the weapons-possession charges was illegally obtained. (*Id.* ¶¶ 36-45.) Mr. Garcia further contends his prosecution is wrongful because he qualifies for a law-enforcement exemption to the weapons charges pursuant to N.J. Stat. Ann. § 2C:39-6(a)(7)(a). (*Id.* ¶ 56.) Mr. Garcia also claims the prosecution of him is the "culmination of targeted harassment and retaliation" by the Wharton Police Department after supervisors there were "[u]nable to achieve their administrative objective of terminating" him after he complained of the Police Department's "violations of departmental policies regarding internal affairs procedures" applied to police officers. (*Id.* ¶¶ 93-101.)

4

### B.  Procedural History

The Garcias filed this Complaint on September 13, 2019 alleging violations of the New Jersey Law Against Discrimination ("LAD") and Americans with Disabilities Act ("ADA") (Count One), the New Jersey Conscientious Employee Protection Act ("CEPA") (Count Two), Malicious Prosecution (Count Three), Negligent and/or Intentional Infliction of Emotional Distress (Count Five), and Conversion/Replevin (Count Six). (*Id.* ¶¶ 102-139.)

The Prosecutor Defendants and Rivera filed a Motion to Dismiss in Lieu of Answer on October 18, 2019, seeking to have Counts One and Six dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for the failure to state a claim for which relief can be granted and on the basis that they have immunity against charges grounded in their roles as prosecutors. (*See* Defs.' Br. in Support of Mot. (ECF No. 6-1) at 1.) Four days later, the Prosecutor Defendants filed another Motion, seeking the dismissal of Courts Three, Four, and Five, again claiming prosecutorial immunity and the failure to state a claim. (*See* Defs.' Br. (ECF No. 7-2) at 1.) Both Motions also seek, in the alternative, that the litigation be stayed pending the criminal prosecution against Mr. Garcia. (ECF No. 6-1 at 1; ECF No. 7-2 at 1-2.) The Garcias opposed both Motions. (ECF No. 15.) The Prosecutor Defendants filed Replies for each of their Motions. (ECF Nos. 16, 17.)

Approximately one month later, the Police Defendants filed their Motion, seeking to dismiss the Complaint for failure to state a claim and because they are entitled to qualified immunity. (ECF No. 18.) On January 6, 2020, the Garcias opposed that Motion. (ECF No. 21.) The Police Defendants filed a Reply on January 14, 2020. (ECF No. 22.)

### II.  LEGAL STANDARD

### A.  Rule 12(b)(1) Standard

The Federal Rules of Civil Procedure mandate dismissal of a case when the Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), plaintiff bears the burden of persuading a court subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. PA Tpk. Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999).

When a defendant moves to dismiss a claim for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court must determine whether the defendant is making a "facial or factual challenge to the court's subject-matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891 ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true."). The court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable

6

claim of subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) (citing *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)).

Under a factual attack, however, the challenge is to the trial court's "very power to hear the case." *Mortensen*, 549 F.2d at 891. Thus:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Mortensen*, 549 F.2d at 891. Moreover, in a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs.*, 220 F.3d at 178. Regardless of the analysis, the plaintiff bears the burden of demonstrating the existence of subject-matter jurisdiction. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (citing *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)).

Here, Defendants, by asserting Eleventh Amendment immunity, raise a facial 12(b)(1) challenge. In so doing, Defendants do not necessarily dispute the facts asserted by the Garcias, but rather rely on immunity that the claims asserted bar this Court from jurisdiction. *See Blanciak*, 77 F.3d at 694 n.2 (dismissing claims protected by the Eleventh Amendment because immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction."); *Wright v. N.J. Dep't of Educ.*, 115 F. Supp. 3d 490, 496–97 (D.N.J. 2015) (dismissing claims pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction because the plaintiff "has not met his burden of establishing waiver of sovereign immunity"). This "facial" attack limits the Court's review to the pleadings and exhibits attached thereto, and the Court must consider the allegations in the light

most favorable to Plaintiff. *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891. The Garcias bear the burden of proving subject-matter jurisdiction, *McCann*, 458 F.3d at 286; *Lightfoot*, 564 F.3d at 627, and the Court must dismiss the Complaint if it appears to a certainty the Garcias cannot demonstrate a colorable claim of jurisdiction, *D.G.*, 559 F. Supp. 2d at 491.

### B.  Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is 'not akin to a

probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III.   DECISION

All the Defendants have raised immunity defenses, so the Court will address that subject before considering arguments directed to particular causes of action in the Complaint.

### A.  Motion to Dismiss Pursuant to Rule 12(b)(1)

#### i.  The Prosecutor Defendants

The Prosecutor Defendants seek dismissal of the Complaint because "States, state agencies and state officials acting in their official capacities cannot be sued under the principles of sovereign immunity and the Eleventh Amendment." (ECF No. 7-2 at 4 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989)).) The Court must apply this principle to each of the Prosecutor Defendants.

#### 1.  The Morris County Prosecutor's Office

It is well established "a State may not be sued without its consent." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (quoting *Ex parte State of New York*, 256 U.S. 490, 497 (1921)). This protection derives from the Eleventh Amendment, which provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. As a result, States are immune from suits in federal court brought by their own citizens, or citizens of other states, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100–01; *see also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought . . . .").

This Eleventh Amendment immunity protects not only states but also state agencies, "as long as the state is the real party in interest." *Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) (quoting *Fitchik v. New Jersey Transit Rail Operations*, 873 F.2d 655, 658 (3d Cir.1989) (en banc), *cert. denied,* 493 U.S. 850, 110 S. Ct. 148, 107 L.Ed.2d 107

(1989). In *Coleman v. Kaye*, the Third Circuit determined "when [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the state." 87 F.3d 1491, 1505 (3d Cir. 1996); *see also Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 489 (D.N.J. 2006); *Simmerman v. Corino*, 804 F. Supp. 644, 650 (D.N.J. 1992), *aff'd*, 16 F.3d 405 (3d Cir. 1993). Here, the Morris County Prosecutor's Office was engaged in a classic law-enforcement function when it pursued the indictments and prosecution of Mr. Garcia for the illegal possession and false representation in applying for a Firearms Purchase Identification Card and handgun-purchase permits. Accordingly, the Prosecutor's Office was acting as an arm of the state and is entitled to immunity under the Eleventh Amendment.

The Garcias argue the Prosecutor's Office was not acting as an arm of the state prosecuting the criminal business of the state, but rather the Prosecutor's Office was "a criminal enterprise" seeking to "injure or deprive Plaintiff of his freedom, his livelihood, his property rights, and his Second Amended rights." (ECF No. 15 at 9.) The Court is not persuaded.

The Complaint does not state specifically all the laws Mr. Garcia is alleged to have violated, except to note that the unlawful possession of assault firearms was brought pursuant to N.J. Stat. Ann. § 2C:39-5(f). (ECF No. 1 ¶¶ 55-56.)[2] In other words, on at least the assault-weapon charges, it is clear the Prosecutor's Office was pursuing potential violations of state statutes, which means the Prosecutor's Office was prosecuting the criminal business of the State of New Jersey and, hence, is entitled to Eleventh Amendment immunity.

The Garcias also argue the Prosecutor's Office engaged in a variety of misconduct, such as fraudulently procuring a search warrant, failing to present exculpatory evidence to a grand jury,

---

[2] The Court notes that N.J. Stat. Ann. § 2C:39-10 makes it a crime to make a false representation on firearms-related applications, though the Complaint does not identify the law or regulation that is the source of the false-representation charge facing Mr. Garcia.

and refusing to dismiss the charges in the face of applicable statutory exemptions for which he qualifies and other evidentiary insufficiencies. (ECF No. 1 ¶¶ 36-43, 56-76.) Even if the Court were persuaded by this argument, the Court is guided by the Supreme Court which, in concluding that the long history of a common-law immunity for prosecutors should be extended to alleged § 1983 actions, stated:

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice.

*Imbler v. Pachtman*, 424 U.S. 409, 427–28, 96 S. Ct. 984, 993–94, 47 L. Ed. 2d 128 (1976).

The Court does not conclude here that Mr. Garcia is a "genuinely wronged defendant." Rather, the Court notes that, pursuant to *Imbler*, this civil action, where immunity attaches, is not the forum for potential redress sought by the Garcias. Instead, as the Supreme Court stated:

> Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful deprivations of constitutional rights on the strength of 18 U.S.C. § 242, the criminal analog of § 1983. *O'Shea v. Littleton*, 414 U.S. 488, 503, 94 S. Ct. 669, 679, 38 L.Ed.2d 674 (1974); cf. *Gravel v. United States*, 408 U.S. 606, 627, 92 S. Ct. 2614, 2628, 33 L.Ed.2d 583 (1972). The prosecutor would fare no better for his willful acts.

*Id.* at 429.

Accordingly, the Court concludes that Counts Three's § 1983 claim and the Tort claims of Counts Four and Five as they pertain to the Prosecutor's Office must be dismissed, and the parts of Defendants' Motion seeking to dismiss same are **GRANTED**. Having determined the Prosecutor's Office is entitled to Eleventh Amended immunity, the Court now proceeds to consider

whether the individual prosecutors merit the same immunity to the extent that they were sued in their official capacities.

### 2.   The Prosecutors in their Official Capacity

The Prosecutor Defendants seek dismissal of Count 1 and Counts Three, Four, Five, and Six against them in their official capacities based on the same prosecutorial immunity discussed above. The Court agrees.

The Supreme Court in *Imbler* held "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit. *Imbler*, 424 U.S. at 410; *see also Pierre v. Treasury Dep't*, No. 18-3443, 2018 WL 5801549, at *7–8 (D.N.J. Nov. 5, 2018). This immunity applies to any action "intimately associated with the judicial phase of the criminal process" while a state prosecuting attorney is advocating for the State. *Imbler*, 424 U.S. at 430–31; *see also Moore v. Middlesex Cty. Prosecutor's Office*, 503 F. App'x 108, 109 (3d Cir. 2012) ("Although a prosecutor's deliberate destruction of exculpatory evidence is not entitled to absolute immunity, the decision to withhold such evidence from the defense while functioning as an advocate for the State is protected by absolute immunity.").

In *Van de Kamp v. Goldstein*, the Supreme Court determined that this absolute immunity extends to "when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp*, 555 U.S. 335, 343, 129 S. Ct. 855, 172 L.Ed.2d 706 (2009) (citations omitted). Here, the Garcias allege the Prosecutor Defendants fraudulently procured a search warrant, failed to present exculpatory evidence to a grand jury, and refused to dismiss the charges in the face of applicable statutory exemptions for which he qualifies and for other alleged evidentiary insufficiencies. (ECF No. 1 ¶¶ 36-43, 56-76.) As *Van de Kamp* makes clear, all this alleged conduct is within "the core of the prosecutorial

13

function." *Munchinski v. Solomon*, 618 F. App'x 150, 154 (3d Cir. 2015) (holding that a prosecutor was entitled to absolute immunity from the plaintiff's claim that the prosecutor ignored inconsistent evidence in determining whether there was probable cause for his arrest); *see also Ray v. N.J.*, 219 F. App'x 121, 124 (3d Cir. 2007) (explaining that prosecutorial immunity also extends to decisions to seek an indictment and to preparations for a grand jury) (citations omitted). Moreover, it is clear that suits against prosecutors sued in their official capacities for monetary relief are "not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." *Hafer v. Melo*, 502 U.S. 21, 26, 112 S. Ct. 358, 362, 116 L. Ed. 2d 301 (1991) (quoting *Will*, 491 U.S. at 71 (citation omitted)). Therefore, the Prosecutor Defendants are entitled to prosecutorial immunity, and Counts One, Three, Four, Five and Six against them in their official capacities are dismissed and the Motions seeking same are **GRANTED**.

### 3.   Prosecutor Defendants in Their Individual Capacities

The Prosecutor Defendants also seek to have the Complaint dismissed to the extent that they were sued in their individual capacities. The Garcias argue state officials sued in their individual capacities do not "enjoy the protections of the Eleventh Amendment." (ECF No. 15 at 9 (citing *Hafer*, 502 U.S. at 27).) The Court agrees. As the Supreme Court stated in *Hafer*, "officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant fits comfortably within the statutory term "person." *Hafer,* 502 U.S. at 27. However, contrary to the Garcias' claim, this determination does not end the Court's immunity inquiry.

Having concluded the Prosecutor Defendants do not qualify for prosecutorial immunity in their personal capacity based on the Eleventh Amendment, the Court must determine whether they

are entitled to qualified immunity. *See Pierre v. Treasury Dep't*, No. 18-3443, 2018 WL 5801549, at *8 (D.N.J. Nov. 5, 2018). "According to the doctrine of qualified immunity, law enforcement officers acting within their professional capacity are generally immune from trial 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Wilson v. Layne,* 526 U.S. 603, 119 S. Ct. 1692, 1699, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)).)

As discussed, the Garcias allege the Prosecutor Defendants engaged in a variety of misconduct, such as fraudulently procuring a search warrant, failing to present exculpatory evidence to a grand jury, and refusing to dismiss the charges in the face of applicable statutory exemptions for which he qualifies and other evidentiary insufficiencies. (ECF No. 1 ¶¶ 36-43, 56-76.) The Garcias allege the Prosecutor Defendants "lacked reasonable or probable cause for the administrative and/or criminal proceedings" and "had malicious motive" in carrying out their investigation and prosecution. (ECF No. 1 ¶¶ 120, 121.) However, in reviewing the Complaint the Court finds no facts alleged to support the contention that the Prosecutor Defendants lacked probable cause or had a malicious motive.

To begin, according to the Complaint, Mr. Garcia twice answered "no" to the questions on firearms-related forms asking if he was an alcoholic. (ECF No. 1 ¶¶ 30, 32.) In the Complaint, he makes two arguments in support of these answers. First, he alleges that he had been sober when filling out the first form for more than a year and for nearly a year and a half when he so answered on the second form. (*Id.*). He also alleges that this answer was informed by his "prior experience" with a different firearm-related form that includes the following instruction: "*Note: A recovered alcoholic may answer no to this question." (*Id.* ¶¶ 33-34.) Second, he alleges, "One of the first

symptoms of being an alcoholic is denial of being an alcoholic" and thus "Gregory Garcia was actually exhibiting the symptoms of his disability" when he answered "no" to the alcoholism questions. (*Id.* ¶¶ 105-106.)[3] In other words, the Complaint does not deny liability for making false representations, but rather denies culpability for the alleged false representation violations.

Similarly, Mr. Garcia does not deny possession of weapons made illegal by New Jersey law, but rather argues that he qualifies for a law-enforcement exception to those laws and he describes what is essentially a dispute with prosecutors over the factual predicates for such qualifications. In other words, the Garcias have offered no facts or evidence supporting an allegation that the decision to prosecute was made in bad faith or with an improper motive. *Pierre*, 2018 WL 5801549, at *8 (citing *Bowser v. Borough of Freehold*, 99 F. App'x 401, 404 (3d Cir. 2004). Therefore, the Complaint does not allege facts "sufficient to show the violation of a 'clearly established constitutional right.'" *Pierre,* 2018 WL 5801549, at *8 (quoting *Mierzwa v. City of Garfield*, 170 F. App'x 212, 215 (3d Cir. 2005) (affirming the district court's conclusion that a prosecutor was entitled to qualified immunity from the plaintiff's claim that the prosecutor mishandled the investigation underlying the criminal charges that were brought against the plaintiff); *Wilson v. Russo*, 212 F.3d 781, 789 n.5 (3d Cir. 2000) (stating that an unsatisfactory or even negligent investigation does not deny a defendant entitlement to qualified immunity). Accordingly, the prosecutors sued in their individual capacities are entitled to qualified immunity for their actions taken in the underlying criminal prosecution. Therefore, the Prosecutor Defendants' Motions to dismiss Counts One, Three, Four, Five and Six against them in their

---

[3] In opposing the Prosecutor Defendants' Motions, the Garcias argue, "Denial of being an alcoholic, however, is a symptom (in fact, the prime symptom) of alcoholism." (ECF No. 15 at 18.) In opposing the Police Defendants' Motion, Mr. Garcia says he "steadfastly denies being an alcoholic. . . ." (ECF No. 21 at 5.)

16

individual capacities are **GRANTED**.

### ii.  The Police Defendants

The Police Defendants seek to have Counts Four and Five dismissed on the grounds of qualified immunity. The Garcias argue the Police Defendants' conduct was not objectively reasonable in light of the clearly established law at the time the action was taken, which is the criterion on which such a determination turns. (ECF No. 18 at 10 (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).) Specifically, the Garcias point to a welfare check initiated by Fernandez, and carried out by Young and Kranz, that they claim "was an overt guise for harassing Plaintiff and his wife at their home." (ECF No. 18 at 10.)

"A law enforcement defendant is entitled to qualified immunity when 'the conduct alleged by the plaintiff violated a clearly established principle of constitutional or statutory law,' and the violation of said right 'would have been apparent to an objectively reasonable official.'" *Pierre*, 2018 WL 5801549, at *10 (citing *Walter v. Pike Cty., Pa.*, 544 F.3d 182, 191 (3d Cir. 2008)).)

The Fourth Amendment clearly establishes the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has stated:

> It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez,* 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L.Ed.2d 1068 (2004) (quoting *Payton v. New York,* 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L.Ed.2d 639 (1980); some internal quotation marks omitted). Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions. *Flippo v. West Virginia,* 528 U.S. 11, 13, 120 S.Ct. 7, 145 L.Ed.2d 16 (1999) *(per curiam); Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967).

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650

(2006). Therefore, qualified immunity initially rests on a determination of whether the welfare check ordered by Fernandez was objectively reasonable. Defendants bear the burden of proving that qualified immunity applies. *Goode v. Camden City Sch. Dist.*, No. 16-3936, 2017 WL 2265146, at *3 (D.N.J. May 24, 2017) (citing *Thomas v. Indep. Twp.*, 463 F.3d 285, 293 (3d Cir. 2006).

The date of the welfare check visit was November 4, 2016 (ECF No. 1 ¶¶ 91-97.) The impetus for that check was Mr. Garcia's request for time off citing a family medical emergency. (*Id.* ¶ 91.) The Court notes that this date also was the date on which Mr. Garcia claims he sought "alcohol dependency treatment." (*Id.* ¶ 16.) Regardless, the Police Defendants contend "a 'medical emergency' in the family of a police officer . . . could certainly lead the individual [Police Defendants] to visit his home to make sure everything was all right." (*See* Police Defs.' Reply (ECF No. 22) at 9.) The Police Defendants further argue that qualified immunity "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" (*Id.* at 10 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).)

"Qualified immunity may be considered on a motion to dismiss in the situation where "a plaintiff, *on his own initiative*, pleads detailed factual allegations." *Goode v. Camden City Sch. Dist.*, No. 16-3936, 2017 WL 2265146, at *3 (D.N.J. May 24, 2017) (citing *Thomas v. Indep. Twp.*, 463 F.3d 285, 293 (3d Cir. 2006)).) Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citations omitted). Here, there is nothing in the Complaint or law cited by the Garcias that would lead the Court to conclude a police chief sending officers on a welfare check of a fellow officer who reported a family medical emergency violates a clearly established right, neither can the Court

18

conclude a police officer conducting a welfare check under such circumstances violated a clearly established right.

The Garcias allege this welfare check was a mere ruse for harassing them in their home. However, they have not alleged facts supporting this allegation, only their conclusion that the welfare check was a ruse. The facts alleged in the Complaint suggest two possible reasons for a welfare check, a family medical emergency and Mr. Garcia's seeking treatment for alcoholism. As a result, the Court finds dismissal of the Complaint should be dismissed against the Police Defendants is warranted on grounds of qualified immunity.

### B.  Motion to Dismiss Pursuant to Rule 12(b)(6)

To the extent any of Plaintiff's claims are not dismissed by the above analysis, he Court nevertheless finds that the Complaint should be dismissed for the failure to state a claim for which relief can be granted.

### i.  Count One

In Count One, the Garcias allege Defendants violated the New Jersey Law Against Discrimination, or LAD, and the Americans With Disabilities Act, or ADA, by targeting Mr. Garcia for discipline on the basis of a disability: alcoholism.

To establish a violation of Title II of the ADA, Mr. Garcia must allege: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Muhammad v. Court of Common Pleas*, 483 F. App'x 759, 762 (3d Cir. 2012).

The Garcias argue the Motions should be denied in part because both sets of Defendants raised no arguments contesting the first prong of the ADA test. But this argument misstates the

objective of a Court considering a Motion to Dismiss. "A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012). Toward that end, *Iqbal* requires that district courts accept all of a complaint's well-pleaded facts as true but allows courts to disregard any legal conclusions therein. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Iqbal,* 129 S. Ct. at 1949).)

The Garcias allege Mr. Garcia has been mistreated by his employer, the Wharton Police Department, in violation of the ADA and LAD because the Department perceives him to be a disabled person as a result of alcoholism. He denies he is an alcoholic, though he admits to filing an application for a disability insurance claim "due to his seeking alcohol dependency treatment on November 4, 2016." (ECF No. 1 ¶ 16.) He also infers he was not an alcoholic when he signed the firearms forms (*Id.* ¶¶ 20, 30, 32), though he states that denial of alcoholism on those form actually would be a classic sign of alcoholism. (*Id.* ¶ 105.)

The ADA defines the term disability to mean "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102. "[M]ajor life activities" include "Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and [t]he operation of a major bodily function." 29 C.F.R. § 1630.2(i), (ii). The Garcias do not allege any facts suggesting Mr. Garcia has a physical or mental impairment that substantially limits one or more major life activity, nor does the Complaint plead any facts suggesting a reason for the Department to perceive that he had such a physical or mental impairment. The Complaint alleges he has remained sober since completing a treatment program in January 2017, that he was declared

"psychologically fit for duty" by Dr. Guller, that Dr. Guller declared he is "functioning adequately . . . without evidence of impairment," and that he is "capable of carrying a weapon and fulfilling all of the duties" of his rank as a police officer. (ECF Nos. 20, 23-26.) The Complaint further alleges all of this was communicated to the Police Department and to Prosecutors. Furthermore, the Complaint does not allege any facts supporting a conclusion that the Department perceived him, rightly or wrongly, to be suffering an impairment that limited a major life activity. Accordingly, the Court concludes the Garcias have not sufficiently pleaded an ADA claim.

This does not end the Court's inquiry regarding Count One, because the Garcias also pleaded in this Count a violation of the LAD, which speaks in terms of handicaps, not disabilities. While those terms often are interchangeable, the definitional insufficiency identified above is not implicated in the LAD, as the New Jersey statute's definition of "handicapped" does not require a showing of a substantial limitation of a major life activity. *Failla v. City of Passaic*, 146 F.3d 149, 154 (3d Cir. 1998) (citing *Olson v. General Elec. Astrospace,* 966 F. Supp. 312, 314–15 (D.N.J. 1997); *Illingworth v. Nestle U.S.A., Inc., 926* F. Supp. 482, 488 (D.N.J. 1996); *Gimello v. Agency Rent–A–Car Sys.,* 594 A.2d 264, 275 (N.J. Super. Ct. 1991) (noting that the LAD definition of "handicapped" does not include a major life activity requirement). In fact, alcoholism is considered a handicap under the LAD. *Matter of Cahill*, 585 A.2d 977, 979 (N.J. Super. Ct. App. Div. 1991) (citing *Clowes v. Terminex Intern., Inc.,*  538 A.2d 794, 804 (N.J. 1988).

"New Jersey courts have articulated the elements of a prima facie case of discrimination, identifying the following common factors: (1) plaintiff was handicapped or disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) plaintiff suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the

same work after plaintiff had been removed from the position. *Victor v. State*, 952 A.2d 493, 501, 401 N.J. Super. 596, 609 (N.J. Super. App. Div. 2008), *aff'd as modified*, 4 A.3d 126, 203 N.J. 383 (2010).

Were Mr. Garcia an alcoholic or if the Department did perceive him to be an alcoholic, it is apparent that he would satisfy the first two prongs. Defendants argue the Complaint fails the third prong because he did not suffer an adverse employment action as a result of alcoholism, but rather because he broke the law. The Court agrees, and notes further that the Garcias have not pleaded any facts on the fourth prong, that the Wharton Police Department hired someone else to perform Mr. Garcia's work. Consequently, Defendants' Motions to Dismiss Count One are **GRANTED** as to all Defendants.

### ii.  Count Two

In Count Two, the Garcias allege the Wharton Police Department and Fernandez, Young and Kranz violated the New Jersey Conscientious Employee Protection Act, ("CEPA"), N.J. Stat. Ann. 34:19–1 *et seq.* "CEPA prohibits employers from taking any retaliatory action against an employee who reports on suspected illegal activity." *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 406 (D.N.J. 2008) (citing N.J. Stat. Ann. 34:19–3).

To establish a *prima facie* case under CEPA, Plaintiffs must establish Mr. Garcia's (1) reasonable belief that his employer's conduct violated a law, rule, or regulation; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between his whistle-blowing activity and the adverse employment action. *Figueroa*, 580 F. Supp. 2d at 407

(citing *Caver v. The City of Trenton,* 420 F.3d 243, 254 (3d Cir. 2005); *Dzwonar v. McDevitt,* 177 N.J. 451, 462, 828 A.2d 893 (2003)).

The Police Defendants, the only Defendants facing this claim, argue this Count should be dismissed because this action is untimely, being filed more than a year after the accrual of any alleged cause of action, meaning more than a year after an adverse employment action. (ECF No. 18-4 at 20 (citing N.J. Stat. Ann. § 34:19-5).) More particularly, the Police Defendants argue Mr. Garcia was suspended indefinitely on June 18, 2018, and the Department's appeal of his application for employment benefits occurred on August 1, 2018, while this Complaint was filed on September 13, 2019, or more than a year after both his suspension and the unemployment appeal.

The Garcias counter that because Mr. Garcia was suspended indefinitely without pay, every day he is suspended he suffers a new harm, and therefore the Complaint was timely filed. The Garcias cite no case to support their every-suspended-day-is-a-harm theory, and the Court is not persuaded.

CEPA defines actionable retaliation as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." *Green v. Jersey City Bd. of Educ.*, 177 N.J. 434, 446, 828 A.2d 883, 890 (2003) (quoting N.J. Stat. Ann. § 34:19–2e). New Jersey Appellate Courts have interpreted this language to mean a CEPA claim accrues on the date of actual demotion, suspension or termination of employment. *Villalobos v. Fava*, 775 A.2d 700, 707 (N.J. Super. Ct. App. Div. 2001) (citing *Alderiso v. Med. Ctr. of Ocean County,* 770 A.2d 275, 281 (N.J. 2001); *Keelan v. Bell Commun. Research,* 674 A.2d 603, 607 (N.J. Super. App. Div. 1996); *Daniels v. Mut. Life Ins. Co.,* 773 A.2d 718 (N.J. Super. App. Div. 2001)). In *Villalobos*, the Appellate Division held

23

that a "plaintiff need not know with certainty that there is a factual basis for a claim under CEPA for the one year limitation period to be triggered; it is sufficient that he *should* have discovered that he *may* have a basis for a claim." *Villalobos*, 775 A.2d at 707 (citations omitted). Certainly on the date of his suspension, Mr. Garcia knew or should have discovered that there had been an adverse employment action taken against him. The plain language of the statute, which states that a CEPA claim accrues on the date of his suspension, and the holding in *Villalobos* both lead this Court to conclude that the Garcias' CEPA claim was untimely filed. Moreover, the Court observes that the adoption of the Garcias' reasoning potentially gives the Garcias two dates for the tolling of their CEPA claim, the date of the last withheld paycheck—assuming his suspension has not been lifted, that would be at least one year from the date of this Opinion, a date in May 2021— and, in the event the suspension is made permanent and retroactive, the date of that termination, meaning a June 2019 date. The Court declines to interpret the plain language of the statute to yield such a complicated and contradictory result.

Even if the Court were inclined to adopt the Garcias' timeliness theory, for the reasons the Court has stated is it apparent the Garcias have not pleaded sufficient facts to support either the first or the fourth CEPA prong: establishing 1) that Mr. Garcia reasonably believed his supervisor's conduct was violating either a law or a rule or regulation promulgated pursuant to law and 2) a causal connection between the whistle-blowing activity and the adverse employment action.

The Garcias allege Mr. Garcia's prosecution is in retaliation for whistle-blowing activity he engaged in from 2014 through 2016. However, there are no facts alleged for this Court to determine whether Mr. Garcia possessed the reasonable belief that a practice, activity or policy of his supervisors was in violation of the law or any promulgated regulation. Rather, the Garcias allege only that Mr. Garcia told his supervisors of "their violations of departmental policies

regarding internal affairs procedures," that he spoke up when he believed his supervisors were treating his fellow officers unfairly and unlawfully, and that he organized a union vote on whether the union should file administrative charges against Fernandez. (ECF No. 1 ¶¶ 86-88.) Even if the Court were to assume on the basis of these allegations that Mr. Garcia did possess a reasonable belief that a practice, activity or policy of his supervisors was in violation of some law or any promulgated rule or regulation, facts allegedly establishing a causal connection between his whistle-blowing activities and retaliatory acts—including "an onslaught of unwarranted internal affairs investigations, harassment at and inside Plaintiff's home; privacy and Fourth Amendment violations at and inside Plaintiff's home; illegally obtaining Plaintiff's gun license records, and providing the Morris County Prosecutor's Office with false and misleading information" to cause the Prosecutor's Office to investigate and prosecute him—also are lacking. (ECF No. 21 at 8.) There are no facts pertaining to the "onslaught" of internal affairs investigations; no facts regarding the allegedly illegal obtaining of gun-license records; nor of providing the Prosecutor's Office with false information. What facts are contained in the Complaint show a reasonable explanation for a welfare check after an employee sought time off as a result of a family medical emergency; probable cause to believe Mr. Garcia had lied about not being an alcoholic on firearms forms after he had reported to supervisors of his treatment for alcohol dependency; probable cause to believe he had assault weapons in his house based on photographs of cans of ammunition that can be, but are not exclusively, used for assault weapons; and grounds for a suspension, being criminal charges brought against him. Accordingly, the Police Defendants' Motion to Dismiss Count Two is **GRANTED**.

### iii.  Intentional Torts

In Count Four, the Garcias allege violations of their federal rights pursuant to § 1983. As discussed above, the Court concludes all Defendants are entitled to immunity as to this Count. Therefore, the Court will together discuss Counts Three and Five, which allege the intentional torts of Intentional Infliction of Emotional Distress and Malicious Prosecution.

Plaintiffs establish a *prima facie* claim for intentional infliction of emotional distress by showing: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Pierre*, 2018 WL 5801549, at *9 (citing *Witherspoon v. Rent–A–Center, Inc.*, 173 F.Supp.2d 239, 242 (D.N.J. 2001); *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988)).

The Garcias have failed to establish that the Prosecutor Defendants brought charges against Mr. Garcia intending to cause emotional distress. Indeed, the Complaint alleges facts supporting the conclusion that the prosecution of Mr. Garcia was based on probable cause for the belief that he had lied about being an alcoholic, after informing the Police Defendants that he had undergone treatment for alcohol dependency, and that he had illegal weapons, based on photographs of ammunition that can be used in assault weapons, even when such weapons may have other purposes. Therefore, the Garcias have failed to establish that the Prosecutor Defendants acted with the intent necessary to support a claim for intentional infliction of emotional distress.

A malicious-prosecution claim requires a showing that:

> "1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted

> maliciously or for a purpose other than bringing the plaintiff to
> justice; and (5) the plaintiff suffered a deprivation of liberty . . . ."

*Pierre*, 2018 WL 5801549, at *9 (citing *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009)

(quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003))).

The Garcias have not pleaded any facts showing that the Prosecutor Defendants intentionally brought charges for which there was no probable cause, nor can they satisfy the second malicious-prosecution prong, as the Court has not been informed that criminal action has been resolved in Mr. Garcia's favor. The Garcias instead allege that they "anticipate[] that all such proceedings will be terminated in his favor and/or in a manner not adverse to him." (ECF No. 1 ¶ 119.) As the Garcias provide no support for the proposition that there exists an anticipatory favorability standard for malicious prosecution, on this basis alone the Garcias have failed to establish a claim for malicious prosecution by the Prosecutor Defendants and the Police Defendants.

### iv.  Negligence

In Count Five, the Garcias also allege the negligent infliction of emotional distress. Even if the Court had not already concluded the Prosecutor Defendants had Eleventh Amendment immunity against such claims, New Jersey's Tort Claims Act provides a different basis of immunity, expressly stating "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J. Stat. Ann. § 59:3-8. While N.J. Stat. Ann. § 59:3-14 separately provides that "this act shall [not] exonerate a public employee from liability if it is established that his conduct was outside of the scope of his employment or constituted a crime, actual malice or willful misconduct," as discussed above, the Court already has concluded the Garcias had failed to sufficiently allege the Prosecutor Defendants acted with malice or outside the scope of their employment. "Moreover, the New

27

Jersey Tort Claims Act's limitation of prosecutorial immunity does not appear to incorporate a claim for negligent infliction of emotional distress, as said claim requires a showing of *negligence*, not malice." *Pierre*, 2018 WL 5801549, at *9 (citing *Decker*, 561 A.2d 1122). Consequently, the Court finds that Count V's negligence claim against the Prosecutor Defendants also is barred by prosecutorial immunity and must be dismissed.

As to the Police Defendants, in New Jersey, the tort of negligent infliction of emotional distress "can be understood as conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care. *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1128 (N.J. 1989) (citing Dreschsel, "Negligent Infliction of Emotional Distress: New Tort Problem for the Mass Media," 12 *Pepperdine L.Rev.* 889, 896 (1985)). A plaintiff establishes liability for this tort by showing that "a defendant's conduct was negligent and proximately caused plaintiff's injuries." *Id.* However, "injury is compensable 'only if it is severe and substantial, . . . not merely transitory but rather has a discernible effect on the plaintiff's ability to function normally, either physically or psychologically, on a daily basis.'" *Turner v. Wong*, 832 A.2d 340, 349 (N.J. Super. App. Div. 2003). Excepting one line that the Garcias continue "to suffer severe emotional distress," the Complaint is otherwise silent about the severity and substantiality of this alleged distress, or even how that distress is experienced. Accordingly, the Police Defendants' Motion to dismiss Count V is **GRANTED**.

### v.   Count Six

In Count Six, the Garcias seek the return of property seized during the June 18, 2018 execution of the search warrant. The Garcias argue they have "the right to possession of [] seized property immediately upon conclusion of the criminal matter." Still, the Garcias state that in the

event the Court finds their cause of action for this Count has not yet accrued, they request that any dismissal of this claim be without prejudice.

New Jersey law allows prosecutors to retain possession of items seized as evidence for a criminal prosecution until "entry of judgment or dismissal of the criminal proceeding." *See* N.J. Stat. Ann. §§ 2C:64-2, 2C: 64-2. It is therefore apparent that any Replevin action by the Garcias is premature. Nevertheless, the Court will accommodate the Garcias' request, and therefore, the Motion to Dismiss Count Six is **GRANTED** without prejudice.

**IV.    CONCLUSION**

For the reasons set forth above, the Prosecutor Defendants' Motion to Dismiss Count One and Six, as well as their Motion to Dismiss Count Three, Four, and Five, are **GRANTED**, while the Police Defendants' Motion to Dismiss the Complaint in its entirety also is **GRANTED**. The Prosecutor Defendants' Motion, in the alternative, to Stay the litigation pending the completion of the criminal prosecution of Mr. Garcia is **DENIED** as moot. An appropriate Order follows.


**Date: May 29, 2020**                                    */s/ Brian R. Martinotti*_____
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**